## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CURTIS LEE SHULER,

      Petitioner,

v.                                                          CASE NO. 8:10-CV-1678-T-27AEP

STEVEN WELLHAUSEN, WARDEN,
TOMOKA CORRECTIONAL INSTITUTION,

      Respondent.

_____/

## O R D E R

      Petitioner initiated this action by filing a Petition for Writ of Habeas Corpus pursuant to

28 U.S.C. § 2254 (Dkt. 1) and a memorandum of law in support (Dkt. 2).  Petitioner challenges

his convictions for attempted burglary and first-degree murder in case no. 98CF2951, and the

sentence imposed in case no. 98CF2950, in the Tenth Judicial Circuit Court, Polk County,

Florida.  Respondent filed a response to the petition (Dkt. 29), and Petitioner filed a reply (Dkt.

37).  An evidentiary hearing is not necessary for the disposition of the petition.  Rules Governing

Section 2254 Cases 8(a) (2013).

### Procedural History

      Petitioner and his co-defendant, Sylathum Streeter, were charged with first-degree

murder,[1] armed burglary, and shooting into an occupied vehicle (Resp. Ex. 1, Vol. I at record pp.

81-84).  Petitioner and Streeter were tried separately.  Petitioner was found guilty as charged (Id.

---

[1]The murder victim was Larry Steven Tyler (Resp. Ex. 1, Vol. I at record p. 81).

at record pp. 100-01).  He was sentenced to life in prison on the first-degree murder conviction, and concurrent 248.5 month prison terms on the armed burglary and shooting into an occupied vehicle convictions (Id. at record p. 103). The state appellate court reversed and remanded for a new trial (Id. at record pp. 106-09); *Shuler v. State*, 816 So. 2d 257 (Fla. 2d DCA 2002).[2]

After a change of venue (Id. at record p. 110), Petitioner was tried again.  That trial ended in a jury deadlock and mistrial (Id. at record pp. 61, 118).  After Petitioner's third jury trial, he was found convicted of first-degree murder and the lesser offense of attempted burglary, and acquitted of the shooting into an occupied vehicle charge (Id. at record pp. 127-28).  He was sentenced to life in prison on the first-degree murder conviction and a concurrent five-year prison term on the attempted burglary conviction (Id. at record pp. 129-34).[3]  His convictions and sentences were affirmed on appeal (Resp. Ex. 4); *Shuler v. State*, 888 So. 2d 35 (Fla. 2d DCA 2004) [table].  Certiorari review was denied.  *Shuler v. Florida*, 543 U .S. 1161 (2005).

In state appellate court, Petitioner filed a *pro se* petition for writ of habeas corpus, alleging ineffective assistance of appellate counsel (Resp. Ex. 8).  His petition was denied (Resp. Ex. 12); *Shuler v. State*, 911 So. 2d 1244 (Fla. 2d DCA 2005) [table].

---

[2]In case no. 98CF2950, Petitioner pleaded no contest to felony causing bodily injury, and was initially sentenced to 12 years and 5 months in prison, concurrent with his sentences in case no. 98CF2951 (Resp. Ex. 1, Vol. I at record pp. 87-88; Resp. Ex. 34).  The appellate court affirmed the conviction in case no. 98CF2950, but remanded for resentencing (Resp. Ex. 1, Vol. I at record pp. 106-09).  Petitioner was resentenced to a 138 month prison term, to run consecutively to the sentences in case no. 98CF2951 (Resp. Ex. 34 at "Exhibit G").

[3]Although the record does not indicate the sentence Petitioner received on the attempted burglary conviction, the Court takes judicial notice of information available on September 4, 2013, on the database maintained by the Clerk of the Court, Tenth Judicial Circuit, Polk County, Florida, http://www.polkcountyclerk.net/recordsearch, which indicates that Petitioner was sentenced on April 24, 2003, to a five-year prison term on the attempted burglary conviction.  See Fed. R. Evid. 201.

Petitioner filed a *pro se* motion for post conviction relief pursuant to Rule 3.850, Florida Rules of Criminal Procedure. (Resp. Ex. 14, Vol. II at record pp. 226-306).  Several of Petitioner's claims were summarily denied (Resp. Ex. 14, Vol. III at record pp. 430-53; Vol. IV at record pp. 552-665; Vol. V at record pp. 656-756, 771-85).  An evidentiary hearing was held on the remaining claims (Resp. Ex. 14, Vol. V at record pp. 802-26; Vol. VI at record pp. 827-1014).  Following the hearing, the 3.850 motion was denied (Resp. Ex. 14, Vol. VII at record pp. 1015-1162).  On appeal, the denial was *per curiam* affirmed, without written opinion (Resp. Ex. 16); *Shuler v. State*, 32 So. 3d 631 (Fla. 2d DCA 2009) [table].

Petitioner also filed: 1) a petition for writ of habeas corpus (Resp. Supp. Ex. 22), which was dismissed (Resp. Ex. 23); 2) a petition for writ of certiorari (Resp. Supp. Ex. 24), which was denied (Resp. Ex. 25); 3) a petition to invoke the discretionary review of the Florida Supreme Court (Resp. Ex. 29), which was dismissed for want of jurisdiction (Resp. Ex. 30); 4) a petition for writ of habeas corpus (Resp. Ex. 32), which the Florida Supreme Court dismissed (Resp. Ex. 31); 5) a second Rule 3.850 motion (Resp. Ex. 33) and an amended ground to the second Rule 3.850 motion (Resp. Ex. 34), which was denied as untimely, successive, and without merit (Resp. Ex. 35);  6) a petition to invoke all writs jurisdiction, which the Florida Supreme Court dismissed for want of jurisdiction (Resp. Ex. 44); and 7) a Motion to Correct Illegal Sentence (Resp. Supp. Ex. 45), which was denied (Resp. Supp. Ex. 46).

## The AEDPA Standard of Review

Petitioner timely filed the instant petition pursuant to 28 U.S.C. § 2244(d), raising ten grounds for relief.  The petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") effective April 24,1996.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The

AEDPA amended 28 U.S.C. § 2254 by adding the following provision:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254, as amended, establishes a highly deferential standard for reviewing state court judgments. *Parker v. Secretary, Dep't of Corr.*, 331 F.3d 764 (11th Cir. 2003) (citing *Robinson v. Moore*, 300 F.3d 1320, 1342 (11th Cir. 2002)).

Section 2254(d)(1) refers to a state-court adjudication that resulted in a decision that was contrary to, or involved an unreasonable application of, established law. The record under review is limited to the record in existence at that time, *i.e.*, the record before the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398–1401 (2011). In addition, § 2254(e)(1) "provides for a highly deferential standard of review for factual determinations made by a state court." *Robinson*, 300 F.3d at 1342. The correctness of state court findings of fact will be presumed, unless the petitioner is able to rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

### Standard of Review for Ineffective Assistance of Counsel Claims

Petitioner claims that his trial and appellate lawyers were ineffective and performed substantially below the standard guaranteed by the Sixth Amendment, and that he was prejudiced as a result. A petitioner claiming ineffective assistance of trial counsel must meet the two-part

4

standard established by *Strickland v. Washington*, 466 U.S. 668 (1984).  To establish a *prima facie* claim of ineffective assistance of trial counsel, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Id*. at 687. Deficient performance is performance which is objectively unreasonable under prevailing professional norms.  *Id.* at 688.  Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

"Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland*."  *Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009) (per curiam) (citing *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991)).  Appellate counsel's performance is prejudicial if "the neglected claim would have a reasonable probability of success on appeal[.]" *Heath*, 941 F.2d at 1132.

## Procedural Default

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). In other words, the state prisoner must provide the state courts an opportunity to address his claims before he presents them to a federal court in a habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also, Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Duncan v. Henry*, 513 U.S. 364

(1995) ("[E]xhaustion of state remedies requires that the state prisoner 'fairly present' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]'") (citation omitted).

Under the procedural default doctrine, "if the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).

A procedural default will be excused only in two circumstances. First, Petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires Petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. *Henderson*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995). To show "prejudice," Petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).  Petitioner must show a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892.

Second, Petitioner may obtain federal habeas review of a procedurally defaulted claim without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Henderson*, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation

has resulted in the conviction of someone who is actually innocent." *Henderson*, 353 F.3d at 892.

This fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence

rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001)

(citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)).  To meet this standard, a petitioner

must "show that it is more likely than not that no reasonable juror would have convicted him" of

the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  In addition, "'to be credible,'

a claim of actual innocence must be based on [new] reliable evidence not presented at trial."

*Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324) (explaining "given the rarity of such

evidence, in virtually every case, the allegation of actual innocence has been summarily

rejected") (internal quotation marks omitted).

**Ground One**

        Petitioner contends that inconsistent verdicts rendered his trial fundamentally unfair.

Specifically, he asserts that the jury's guilty verdict of first-degree murder is legally inconsistent

with the not guilty verdict of armed burglary[4] and shooting into an occupied vehicle, and the

jury's finding that he did not carry, display, or use a firearm during commission of the crimes

(see Resp. Ex. 1, Vol. I at record pp. 127-28).

        To the extent Petitioner argues that the verdicts are "true inconsistent verdicts"

impermissible under Florida law, Respondent correctly argues that the claim is an issue of state

law, which is not cognizable in a federal habeas corpus proceeding (Dkt. 29 at pp. 13-14).  The

purpose of a federal habeas proceeding is to review the lawfulness of a petitioner's custody to

determine whether the custody is in violation of the Constitution or laws or treaties of the United

---

        [4]The jury found Petitioner guilty of the lesser included offense of attempted burglary.

States. 28 U.S.C. § 2254(a); *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). The Supreme

Court has held that federal habeas relief does not lie for errors of state law. *Estelle v. McGuire*,

502 U.S. 62,67-68 (1991) (holding that ". . .it is not the province of a federal habeas court to

reexamine state-court determinations on state-law questions."). A state's interpretation of its

own laws or rules provides no basis for federal habeas corpus relief where no question of a

constitutional nature is involved. *Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir. 1983).

Therefore, Petitioner is not entitled to federal habeas relief pursuant to his claim that the verdicts

are inconsistent under Florida law.

To the extent Petitioner contends that the verdicts are inconsistent and therefore violate

his constitutional rights, Respondent correctly argues that the claim is procedurally defaulted

(Dkt. 29 at pp. 14-18). On direct appeal, Petitioner did not challenge the verdicts as inconsistent

(See Resp. Ex. 2).[5]  Rather, Petitioner raised this claim in his state petition for writ of habeas

corpus  (See Dkt. 1 at p. 9; Resp. Supp. Ex. 24).   In dismissing the state habeas petition, the state

post conviction court stated in pertinent part that "[a] Writ of Habeas Corpus is not the proper

vehicle for obtaining additional appeals of issues which were raised or should have been raised

on direct appeal, which were waived at trial, or which could have, should have, or have already

been raised in postconviction proceedings."  (Resp. Ex. 23). In Florida, a state habeas corpus

petition will be denied as "unauthorized" if the petitioner raises claims that "'could have been

raised at trial or, if properly preserved, on direct appeal of the judgment and sentence. . . .'"

*Cargile v. Sec'y, Dep't of Corr.*, 349 Fed. Appx. 505, 507 (11th Cir. 2009) (unpublished)

---

[5]In his federal habeas petition, Petitioner concedes that he did not raise the claim on direct appeal
(Dkt. 1 at p. 9).

(quoting *Baker v. State*, 878 So. 2d 1236, 1245-46 (Fla.2004)).

The state post conviction court denied Petitioner's inconsistent verdicts claim as procedurally defaulted because he attempted to raise the claim for the first time in a manner not permitted by the Florida courts.  "[I]f 'it fairly appears that the state court rested its decision primarily on federal law,' this Court may reach the federal question on review unless the state court's opinion contains a 'plain statement that its decision rests upon adequate and independent state grounds.'" *Harris v. Reed*, 489 U.S. 255, 261 (1989) (quoting *Michigan v. Long*, 463 U.S. 1032, 1042 (1983)).

In dismissing Petitioner's inconsistent verdicts claim, the state post conviction court issued a "plain statement" applying the independent and adequate state procedural bar. The state appellate court's denial of Petitioner's petition for writ of certiorari without discussion (Resp. Ex. 25) is presumed to have been based on that procedural default rule. *See Harmon v. Barton*, 894 F.2d 1268, 1273 (11th Cir. 1990) (A state appellate "court's per curiam affirmance of the trial court's ruling explicitly based on procedural default is a clear and express statement of its reliance on an independent and adequate state ground which bars consideration by the federal courts."). Consequently, this claim is procedurally defaulted because "it is apparent that the Florida courts would now refuse to hear this claim . . . ." *Smith v. Sec'y, Dep't of Corr.*, 572 F.3d 1327, 1342 (11th Cir. 2009) (citing *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998)).

Because Petitioner shows neither cause and prejudice nor manifest injustice to overcome the procedural default, review of Ground One is procedurally barred.

**Ground Two**

Petitioner contends that appellate counsel was ineffective in failing to raise the issue that

9

the trial court erred in overruling his attorney's objection to the prosecutor's comments during

opening statements that defense witnesses were going to lie.  He argues that the comments were

an improper attack on the credibility and believability of the defense witnesses, and, coupled with

the prosecutor's attack on the defense witnesses' credibility during closing argument, deprived

him of a fair trial.

>During his opening statement, the prosecutor stated in pertinent part:

>>And what's going on here is really simple, folks, Mr. Streeter is done.  So's Mr.
>>Lester.  They're out of here.  They're going to spend the rest of their lives in
>>prison for these crimes, and they don't want their buddy to get there with them.
>>So they're going to come in here either live or through their testimony that's read
>>back and lie to you.

(Resp. Ex. 1, Vol. III at transcript p. 336).  Defense counsel's objection was overruled.  The

prosecutor then stated:

>>They're going to lie to you to save their friend.  So you're going to have to make
>>up your mind, do you believe what was said initially?

(Id.).

>In Florida, "[o]pening statements are not evidence, and the purpose of opening argument

is to outline what an attorney expects to be established by the evidence."  *Gonzalez v. State*, 990

So. 2d 1017, 1024-1025 (Fla. 2008) (citations and internal quotation marks omitted).  Here, the

prosecutor was attempting to summarize what he believed the evidence would be at trial, that

Streeter and Victor Lester were going to lie by testifying that Petitioner did not shoot the victim.

The prosecutor was not expressing a personal opinion.  Rather, he was stating that if Streeter and

Victor Lester so testified, they would be lying because the evidence would show that: 1) on the

night of the crime they gave statements to the police and testified previously that Petitioner shot

Tyler; and 2) Streeter and Lester were already convicted of their crimes and serving life

sentences, and therefore had nothing to lose by testifying that Petitioner did not shoot Tyler

(Resp. Ex. 1, Vol. III at transcript pp. 335-36).

In sum, the prosecutor made his comments in the context of explaining how Streeter and

Lester's expected testimony would be inconsistent with their prior statements and testimony, and

that they had a motivation to lie, consistent with what the prosecutor believed the evidence would

show.[6]

Petitioner has not demonstrated that the comments were improper.  Moreover, even if

they were improper, the trial court remedied any potential harm by instructing the jurors that

counsels' statements were not evidence, and that the jury's decision was to be based only on the

evidence (Resp. Ex. 1, Vol. VI at transcript pp. 767, 825).  *See United States v. Lopez*, 590 F.3d

1238, 1256 (11th Cir. 2009) ("Because statements and arguments of counsel are not evidence,

improper statements can be rectified by the district court's instruction to the jury that only the

evidence in the case be considered.") (quotation omitted)).  Accordingly, Petitioner has failed to

show that his appellate counsel's performance was deficient in failing to raise this claim, or that

he was prejudiced as a result.

Petitioner has not shown that the state court's rejection of this ineffective appellate

counsel claim was contrary to, or an unreasonable application of, clearly established federal law.

**Ground Three**

---

[6]Lester refused to testify during Petitioner's final trial (Resp. Ex. 1, Vol. V at transcript pp. 543-46).
His testimony from Petitioner's first trial was read to the jury (Id. at p. 546).  He testified that Petitioner shot the victim
(Id. at p. 563-64), and that told the police that Petitioner shot the victim (Id. at p. 597).  Detective Cash testified that
Streeter told her that Petitioner shot the victim (Resp. Ex. 1, Vol. IV at transcript p. 477).  Streeter admitted that he gave
a statement implicating Petitioner as the shooter, and previously testified that Petitioner shot the victim (Resp. Ex. 1, Vol.
V at transcript pp. 647, 655, 657-58).

In Ground Three, Petitioner contends that appellate counsel was ineffective in failing to raise the issue that the trial court erred in denying the defense motion in limine to exclude Rosalee Larsen's testimony that after the shooting, she heard Petitioner tell their art teacher that he was going to be arrested. Petitioner argues that Larsen's testimony regarding his statement was inadmissible because: 1) its prejudice outweighed its probative value since it was unclear whether the comment pertained to the Tyler shooting or another crime; and 2) in order to explain the comment, he would have to introduce evidence of other crimes he committed for which he was not charged. He further argues that appellate counsel should have raised the argument that introduction of Larsen's testimony deprived him of a fair trial and due process.

In support of the motion in limine, defense counsel argued that Petitioner's statement that he was going to be arrested was non-specific, allowed the jury to speculate whether the comment pertained to either Tyler's murder or other crimes, the probative value of the comment was outweighed by its prejudicial effect, and it allowed evidence of prior bad acts unrelated to the Tyler murder (Resp. Ex. 1, Vol. IV at transcript pp. 493-95). The motion was denied, and the judge explained that defense counsel could argue that Petitioner's comment was unrelated to the Tyler murder (Id. at transcript p. 494).

To the extent Petitioner contends that his appellate counsel was ineffective in failing to argue on appeal that the trial court erred in denying his motion in limine because Larsen's testimony was inadmissible under Florida law, habeas relief is unavailable. While Petitioner's ineffective assistance claim is of federal constitutional dimension, his underlying claim challenging the admissibility of Larsen's testimony is a matter of state law. The state appellate court, by rejecting this claim, has answered the question of what would have happened if counsel

12

had challenged on direct appeal the denial of the motion in limine on state law grounds. *See Herring v. Sec'y Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under state law had [petitioner's counsel] done what [petitioner] argues he should have done . . . . It is a "fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'"). Petitioner shows neither deficient performance nor resulting prejudice from appellate counsel's failure to challenge the denial of the motion in limine on state law grounds.

To the extent Petitioner argues that appellate counsel should have argued that the denial of the motion in limine deprived him of a fair trial and due process, the claim likewise does not warrant relief. Generally, a state court evidentiary ruling cannot rise to the level of a federal due process violation "unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (quoting *Patterson v. New York*, 432 U.S. 197, 202-03 (1977)). The category of evidentiary errors that violate "fundamental fairness" is very narrow. *Dowling v. United States*, 493 U.S. 342, 352 (1990). "A denial of fundamental fairness occurs whenever the improper evidence 'is material in the sense of a crucial, critical, highly significant factor.'" *Snowden v. Singletary*, 135 F.3d 732, 737 (11th Cir.1998) (quoting *Osborne v. Wainwright*, 720 F.2d 1237, 1238 (11th Cir.1983)).

The admission of Larsen's testimony did not rise to the level of a federal due process violation because her testimony was not crucial to the State's case. Larsen testified in pertinent part that a few days before she read in a newspaper that Tyler had been shot, she saw Petitioner

13

and their art teacher argue, during which she heard Petitioner say something to the effect that "he wasn't going to be in class, he was getting arrested for something."  (Resp. Ex. 1, Vol. IV at transcript pp. 507-08).  On cross-examination, however, defense counsel elicited from Larsen that she did not recall how many days after the shooting she heard Petitioner make the comment, and that Petitioner never stated why he would be arrested (Id. at transcript pp. 509-510).  Further, the art teacher testified that he did not recall Petitioner ever telling him that he would be going to jail (Resp. Ex. 1, Vol. VI at transcript pp. 718-22).  Finally, Petitioner testified that he could not recall ever making such a statement to the teacher (Id. at p. 743).  Petitioner's comment was effectively challenged by defense counsel.  Moreover, there was substantial evidence independent of Larsen's testimony, including Lester and Adrian Moore's eyewitness testimony, connecting Petitioner to the murder.

Petitioner fails to show that appellate counsel unreasonably elected not to raise this issue on appeal or that Petitioner would have prevailed on this issue if appellate counsel had raised it. *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").  Absent a demonstration of prejudice or deficient performance, Petitioner cannot prevail on this claim.  *See Heath v. Jones*, 941 F.2d at 1130. And Petitioner has not shown that the state court's rejection of this claim was contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Ground Three does not warrant habeas corpus relief.

**Ground Four**

Petitioner contends that appellate counsel was ineffective in failing to raise the issue that the trial court erred in restricting cross examination of witness Moore.  Specifically, he asserts that the trial court erroneously sustained the prosecutor's objection to defense counsel asking Moore what time he first met with Petitioner on the day of the Tyler shooting.  Petitioner argues that the ruling violated his Sixth Amendment Confrontation Clause right because the defense was unable to adequately expose to the jury an inconsistency between Moore and Lester's testimony, namely, that Moore claimed to have met with Petitioner, Lester, and Streeter at approximately noon on the day of the shooting, while Lester testified they met at approximately 5:00 p.m.[7]

Moore testified on behalf of the State, and the prosecutor limited Moore's testimony to the events that took place on the night Tyler was shot (Resp. Ex. 1, Vol. V at transcript pp. 525-29).  During cross-examination, when defense counsel asked Moore when he first met with Petitioner on the day of the crime, the prosecutor objected on the ground that the question went beyond the scope of direct examination  (Id. at p. 529).  The trial judge agreed, and sustained the objection (Id. at pp. 529-32).  The trial judge told defense counsel that he was entitled to call Moore during the defense's case, and that he could cross-examine Moore as to what time they were at the scene of the crime, and how long they had been together that day (Id.).  Defense counsel then asked Moore how long he had been with Petitioner, Lester, and Streeter on the day of the crime, to which Moore answered "all day."  (Id. at p. 533).

---

[7]During Petitioner's 2002 trial, Lester testified that he, Streeter, and Moore went to Petitioner's home at approximately 5:00 p.m. (Resp. Ex. 1, Vol. V at transcript p. 553).

First, Petitioner's Confrontation Clause claim was not preserved for appellate review. Neither at trial nor in his amended motion for new trial (Resp. Ex. 1, Vol. I at record pp. 137-38) did Petitioner alert the trial court that he was raising a federal Confrontation Clause claim.  As a result, he was barred from raising the claim on direct appeal.

In Florida, to be preserved, the issue or legal argument must be raised in the trial court. *See Doorbal v. State*, 983 So.2d 464, 492 (Fla. 2008) ("For an issue to be preserved for appeal, it must be presented to the lower court, and the specific legal argument or ground to be argued on appeal must be part of the presentation.").  Petitioner's failure to preserve the issue barred appellate review unless Petitioner could establish a "fundamental error." *See Archer v. State*, 934 So. 2d 1187, 1205 (Fla. 2006) ("[A]ppellate counsel cannot be ineffective for failing to raise issues not preserved for appeal. [ ] The only exception to this rule is when the claim involves fundamental error.") (internal citations omitted). Fundamental error is error that "reach[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error."  *Kilgore v. State*, 688 So. 2d 895, 898 (Fla. 1996) (quoting *State v. Delva,* 575 So. 2d 643, 644-45 (Fla. 1991)).

Although Petitioner argues in his reply that "[a] sixth [sic] Amendment infringement upon the accused [sic] right to confront his accusers qualifies as a '**_fundamental error_**' and can be raised on appeal with or without a contemporaneous objection in the trial court" (Dkt. 37 at p. 13) (emphasis in original), he has not identified any authority supporting that proposition. Appellate counsel could not have been ineffective in failing to raise this unpreserved issue on appeal.

16

Second, Petitioner's right to confront Moore was not violated.  "[T]he Confrontation Clause guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987) (quoting *Delaware v. Fenstere*, 474 U.S. 15, 20 (1987)). Although defense counsel was precluded by the trial court from asking Moore on cross-examination when he first met Petitioner on the day of the crime, defense counsel was able to establish through Moore that he had been with Petitioner "all day." (Resp. Ex. 1, Vol. V at transcript p. 533).  And defense counsel used this testimony during his closing statement to suggest that Moore's testimony was not credible because it conflicted with Lester's testimony that they met Petitioner at 5:00 p.m., as well as the defense witnesses' testimony that Petitioner was at church attending a special ceremony for his grandfather during the morning and afternoon on the day of the crime (Resp. Ex. 1, Vol. VI at transcript pp. 787-88).  Therefore, Petitioner was able "to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness." *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986) (internal quotation marks omitted).

Moreover, although the trial court prevented defense counsel from asking Moore when he first met Petitioner on the day of the crime, it in no way prevented Petitioner from calling Moore as his own witness and questioning him directly about that.  Any prejudice that may have resulted from the trial court's limitation on cross examination was therefore harmless.  *See Lee v. Ill.*, 476 U.S. 530, 550 n.3 (1986) ("The Confrontation Clause does not require that cross-examination actually occur; it requires only that a defendant be given the opportunity for cross-examination or its functional equivalent."); *United States v. Buchanan*, 500 F.2d 398, 399 (5th Cir. 1974)

("Appellant's contentions that he was denied the right to confrontation are without merit.  He could have called the agent as his own witness, or taken the stand himself on this point.").

Petitioner has failed to demonstrate that appellate counsel's failure to present this Confrontation Clause claim on appeal was objectively unreasonable, or that there was a reasonable probability of success on appeal had counsel presented it. Therefore, Petitioner has not shown that the state court's rejection of this claim was contrary to, or an unreasonable application of, clearly established federal law.

**Ground Five**

Petitioner contends that appellate counsel was ineffective in failing to raise the issue that the trial court erred in overruling the defense objection to the prosecutor's production of Lester on rebuttal so that the jury could observe his eyes.  Petitioner argues that presenting Lester during rebuttal was error under state law because the appearance of Petitioner's eyes did not rebut evidence presented during the defense's case.  He also argues that the trial court's ruling denied him a fair trial and due process.  Finally, he argues that his Sixth Amendment Confrontation Clause rights were violated because Lester was previously declared "unavailable" to testify.

After the defense rested and the trial judge asked if the State had any rebuttal, the prosecutor stated that he intended to call Lester "so the jury can see his eye."  (Resp. Ex. 1, Vol. VI at transcript p. 747).  Defense counsel responded "I don't see the relevance."  (Id.).  The prosecutor explained that there was testimony that the person who shot Tyler was wearing a mask with big eye holes, that John Green[8] testified that he saw the person's face, that Lester has "a distinctive eye," and if the jury saw it, the State could use Lester's appearance as part of its

---

[8]John Green was the driver of the vehicle in which Tyler was shot.

closing argument (Id.).  The trial court allowed the State to call Lester on rebuttal for the limited

purpose of allowing the jury to look at him (Id. at transcript pp. 747-48).  The prosecutor called

Lester, asked him his name, and had him stand in front of and look at the jury (Id. at transcript

pp. 766-67).  The State then rested (Id. at transcript p. 767).

Initially, the state district court of appeal, by rejecting this claim, has answered the

question of what would have happened if appellate counsel had raised this issue on appeal.  The

claim would not have succeeded.  *See Herring v. Sec'y Dep't of Corr.*, 397 F.3d at 1354-55.

Appellate counsel, therefore, cannot be faulted for having failed to raise a state law claim which

would have been rejected. [9]  *See Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)

("the validity of the claim that Alvord's appellate counsel failed to assert is clearly a question of

state law, and we must defer to the state's construction of its own law"), *superseded by statute on

other grounds as stated in Hargrove v. Solomon*, 227 Fed. Appx. 806 (11th Cir. 2007).

To the extent Petitioner asserts that appellate counsel should have briefed a federal

due process and Confrontation Clause violation, that claim was not preserved for appellate

review.  Neither at trial nor in his amended motion for new trial (Resp. Ex. 1, Vol. I at record pp.

137-38) did Petitioner alert the trial court that he was raising a federal Confrontation Clause or

due process violation claim with respect to the State's rebuttal evidence.  As a result, Petitioner

---

[9]In Florida, "rebuttal testimony is permitted to refute a defense theory or to impeach a defense witness."  *Rimmer v. State*, 825 So. 2d 304, 321 (Fla. 2002).  The defense theory was that Petitioner was not present when Tyler was shot, and that Lester shot Tyler.  The defense called Streeter who testified that Lester shot Tyler, and that Petitioner was not there (Resp. Ex. 1, Vol. V at transcript pp. 640-46).  Streeter also testified that the mask Lester wore at the time of the shooting had "eye holes," and that Lester had one eye that "look[ed] completely in a different direction."  (Id. at transcript p. 659).  Green testified that when Tyler was shot, he turned and saw a "black face" in the passenger side window (Resp. Ex. 1, Vol. IV at transcript p. 363).

Evidence that Lester had a noticeable abnormality in one eye was arguably relevant to show that Green likely would have remarked on that if Lester was the shooter.  Therefore, the evidence was admissible on rebuttal to refute the defense theory and impeach Streeter's testimony.

was barred from raising the claim on direct appeal.  *See Doorbal v. State*, 983 So.2d at 492.

Accordingly, Petitioner fails to show that appellate counsel rendered ineffective assistance by

failing to raise this unpreserved issue on appeal.

Even if the claim could have been raised on appeal, Petitioner has failed to demonstrate

that it had a reasonable probability of success.  In light of Lester and Moore's eyewitness

testimony connecting Petitioner to the murder, the rebuttal evidence was not crucial to the State's

case.  Therefore, Petitioner has not shown that the state court's admission of this evidence

rendered his trial so fundamentally unfair as to deprive him of due process.

Likewise, Petitioner has failed to demonstrate a Confrontation Clause violation.  "The

Sixth Amendment affords criminal defendants an opportunity to cross-examine witnesses who

present testimonial evidence."  *United States v. Naranjo*, 634 F.3d 1198, 1213 (11th Cir. 2011).

Testimonial evidence "is typically a solemn declaration or affirmation made for the purpose of

establishing or proving some fact."  *United States v. Underwood*, 446 F.3d 1340, 1346 (11th Cir.

2006) (citing *Crawford v. Washington*, 541 U.S. 36, 51 (2004)).  "[N]on-testimonial evidence is

not subject to confrontation."  *United States v. Cantellano*, 430 F.3d 1142, 1145 (11th Cir. 2005)

(citing *Crawford*, 541 U.S. at 68).

Lester did not provide testimony during the State's rebuttal case.  Rather, he merely

looked at the jury to give them an opportunity to observe his eyes.  Petitioner has failed to present

any Supreme Court or Eleventh Circuit precedent establishing that this evidence is testimonial

for Sixth Amendment purposes.  *Cf. United States v. O'Kane*, 439 F. Supp. 211, 213 (S.D. Fla.

1977) ("an individual's voice, handwriting, or *physical appearance*. . .is not testimonial. . . .")

(emphasis added); *State v. Hoch*, 500 So. 2d 597, 599 (Fla. 3d DCA1986) ("the physical

appearance and gestures of a defendant, are physical evidence and are not testimonial.").

Petitioner has therefore failed to demonstrate that appellate counsel's failure to raise a due

process and Confrontation Clause violation claim on appeal was objectively unreasonable, or that

there was a reasonable probability of success on appeal had counsel presented it.

Petitioner has not shown that the state court's rejection of this claim was contrary to, or

an unreasonable application of, clearly established federal law.  Accordingly, Ground Five does

not warrant habeas corpus relief.

**Ground Six**

Petitioner contends that appellate counsel rendered ineffective assistance in failing to

argue that the prosecutor's improper comments during closing deprived Petitioner of his right to

a fair trial.  Petitioner argues that the prosecutor made improper comments that: 1) disparaged the

defense and defense witnesses; 2) vouched for the State's case and Petitioner's guilt; 3) argued

facts not in evidence or contrary to testimony; 4) implicated Petitioner in other crimes; and 5)

shifted the burden of proof to Petitioner, and violated his right to remain silent.

Initially, Petitioner's trial counsel did not object to any of the prosecutor's comments that

Petitioner challenges (see Id. at transcript pp. 766-81, 802-13) except the "burden shifting"

comments (see Resp. Ex. 1, Vol. VI at transcript pp. 808, 836-37). Moreover, defense counsel

did not move for a mistrial.[10]  Florida procedural rules require a defendant to both timely object

and request a mistrial to preserve a claim for appeal based on improper argument. *Cole v. State*,

866 So. 2d 761, 763 (Fla. 1st DCA 2004) (citing *Nixon v. State*, 572 So. 2d 1336, 1340 (Fla.

---

[10]In fact, defense counsel specifically informed the trial court that "I am not moving for mistrial at this stage." (Resp. Ex. 1, Vol. VI at transcript p. 836).

1990)). *See also Card v. State*, 803 So. 2d 613, 622 (Fla. 2001) ("As a general rule, the failure to raise a contemporaneous objection when improper closing argument comments are made waives any claim concerning such comments for appellate review."). Therefore, appellate counsel's failure to challenge the prosecutor's comments on appeal was not constitutionally deficient because the issue was not properly preserved by objection and a motion for mistrial in the trial court.

Even if appellate counsel could have raised the unpreserved issue on appeal pursuant to the fundamental error exception,[11] Petitioner's claim warrants no federal habeas relief. To prove a prosecutorial misconduct claim, Petitioner must show that the challenged conduct was both improper and prejudiced his substantial rights. *Sexton v. Howard*, 55 F.3d 1557, 1559 (11th Cir. 1995). An improper prosecutorial remark compels habeas corpus relief only if the remark is so egregious that the proceeding is rendered fundamentally unfair. "The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). *Accord Tucker v. Kemp*, 802 F.2d 1293, 1296 (11th Cir. 1986) (en banc) ("If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair."), *cert. denied*, 480 U.S. 911 (1987).

---

[11]The fundamental error doctrine is rarely applied in Florida. *Harrell v. State*, 894 So. 2d 935, 941 (Fla.2005). "To be fundamental, an error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." *Id.* (citation and internal quotation marks omitted). Prosecutorial misconduct "constitutes fundamental error when, but for the misconduct, the jury could not have reached the verdict it did." *Miller v. State*, 782 So. 2d 426, 432 (Fla. 2d DCA 2001) (citing *Kilgore v. State*, 688 So. 2d 895, 898 (Fla. 1996)). Petitioner fails to demonstrate fundamental error because he fails to show that the comments affected the validity of the trial itself such that the guilty verdict could not have been obtained absent the comments.

1. Disparaging the defense and defense witnesses

During closing argument, the prosecutor referred to portions of Streeter's testimony as "hogwash," "unbelievable," "baloney," and "not real" (Resp. Ex. 1, Vol. VI at transcript pp. 770-71, 774, 781), and stated that Streeter "wanted to throw a monkey wrench in the justice system," was trying to "get back at me and the system" for having successfully prosecuted him, and had lied on the "witness stand" (Id. at transcript pp. 771, 779, 781).   The prosecutor also commented that Petitioner had the "best reason to lie" (Id. at transcript p. 772).   With regard to Petitioner's alibi witnesses' testimony that (approximately 18 months after the shooting) they were able to recall that Petitioner was working on his car at the time of the shooting, the prosecutor commented that "you can't remember those kind of things. . .nobody can do that."  (Id. at transcript p. 778).

During rebuttal closing argument, the prosecutor commented that defense counsel's theory as to why Streeter implicated Petitioner in the Tyler shooting but not in several other shootings, was "absurd"  (Id. at transcript p. 803).   Finally, the prosecutor implied that the reason Petitioner's grandfather's trial testimony in 2003 was inconsistent with his testimony in 1999 was that he and others fabricated the alibi (Id. at transcript p. 806).

Petitioner argues that these comments improperly disparaged either the defense's case or defense witnesses (see Dkt. 1 at docket pp. 20-22).  The Court disagrees. The prosecutor's statements were fair comment on the credibility of the defense witnesses and the evidence in the case.  *See Curry v. United States*, 2005 U.S. Dist. LEXIS 47443, at *35 (S.D. Ga. Apr. 27, 2005) ("[T]he prosecutor cannot be faulted for calling a defense witness a liar if his comment about the witness's credibility was "an accurate statement.") (citing *Chandler v. Moore*, 240 F.3d 907, 914

(11th Cir. 2001)).  Moreover, even if the comments were improper, they did not infect the trial with unfairness as to render the conviction a denial of due process.

2. Improper vouching

Petitioner alleges that the prosecutor made 12 separate remarks that improperly vouched for the State's case and Petitioner's guilt (see Dkt. 1 at docket pp. 22-23).  The Eleventh Circuit Court of Appeals has stated that:

> Improper vouching occurs if the prosecutor makes explicit personal assurances of a witness's veracity, or indicates that information not presented to the jury supports a witness's testimony. *United States v. Epps*, 613 F.3d 1093, 1100 (11th Cir. 2010). A prosecutor is permitted to comment on the credibility of a witness without personally vouching for a witness's credibility. *United States v. Lopez*, 590 F.3d 1238, 1257 (11th Cir. 2009). Improper vouching requires a determination that the jury reasonably believed "the prosecutor was indicating a personal belief in the witness' credibility," but does not prohibit arguments about credibility. *Id*. at 1256 (quotation omitted).

*Hong v. Sec'y Dep't of Corr.*, 478 Fed. Appx. 648, 650-651 (11th Cir. 2012) (unpublished).  "A jury could reasonably believe the prosecutor's indications if the prosecutor either places the prestige of the government behind the witness, by making explicit personal assurances of the witness' veracity, or the prosecutor implicitly vouches for the witness' veracity by indicating that information not presented to the jury supports the testimony."  *United States v. Eyster*, 948 F.2d 1196, 1206 (11th Cir. 1991) (citation omitted). "In short, the government cannot argue the credibility of a witness based on the government's reputation or allude to evidence not formally before the jury."  *Id* (citation omitted).

There were no instances of improper bolstering during the prosecutor's closing arguments. The comments identified by Petitioner neither personally endorsed a witness's credibility, nor referenced evidence not before the jury.  Additionally, even if any of the

comments were improper, Petitioner fails to establish that they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 643).

    3. Arguing facts not in evidence or contrary to testimony

    Petitioner contends that the prosecutor argued facts not in evidence when he commented that: 1) Streeter "wants his buddy (Petitioner) to get away with it" and "doesn't like me (the prosecutor). . .[and is] going to get back at me and the system by coming in here and trying to convince you to let [Petitioner] off;" 2) Lester "didn't shoot anybody.  Not at that scene.  He got convicted of the crimes he did on the 30th;" and 3) Petitioner's alibi witnesses "didn't see [Petitioner] fixing no [sic] stereo [on the night of the Tyler shooting];" could not have remembered 18 months later that Petitioner was working on his car at the time Tyler was shot because "nobody can do that;" and "figured out" that the Tyler shooting happened on the day of Petitioner's grandfather's "appreciation day" at their church, and if they could "tie something to that," they possibly could "get [Petitioner] out of this."  (See Dkt. 1 at docket pp. 23-24; Resp. Ex. 1, Vol. VI at transcript pp. 771, 777-78, 781, 806).  The record belies Petitioner's contention.

    The prosecutor's statements regarding Streeter and Lester were fair comment on the permissible conclusions the jury could draw from Streeter's testimony that: 1) he was serving four life sentences on account of the prosecutor; 2) he and Petitioner were friends; 3) he and Lester were convicted for crimes they committed on April 30, 1998; and 4) he previously implicated Petitioner in the Tyler shooting (see Resp. Ex. 1, Vol. V at transcript pp. 633, 650-51, 655, 660).  The statements regarding the alibi witnesses were fair comment on the witnesses' credibility, and the permissible conclusions the jury could draw from their testimony that they

waited over a year before telling anyone in authority that Petitioner had been working on his car

at the time of the shooting (see Resp. Ex. 1, Vol. V at transcript pp. 675, 687; Vol. VI at

transcript p. 691). The record therefore shows that the prosecutor did not argue facts not in

evidence.

4. Implicating Petitioner in other crimes

Petitioner contends that during closing, the prosecutor improperly implicated Petitioner in

other crimes.  The record belies the claim.  The prosecutor implicated Streeter and Lester in other

shootings; he did not implicate Petitioner in those crimes (Resp. Ex. 1, Vol. VI at transcript pp.

770-71, 803).  Although the prosecutor indicated that on the same day Streeter and Lester shot

five people in a hotel room (four days after the Tyler shooting) Petitioner "was still riding around

with [them]," he did not implicate Petitioner in that shooting (Id. at transcript pp. 770-71).

5. Shifting the burden of proof

Petitioner contends that the prosecutor shifted the burden of proof to the defense "in

violation of [his] right to remain silent and presumption of innocence until proven guilty"  (Dkt.

1 at docket p. 25) when he commented that: 1) the jury could find Petitioner guilty because

Petitioner failed to establish his innocence, and the defense witnesses failed to proclaim

Petitioner's innocence when he was arrested and detained in jail; and 2) if Petitioner had wanted

DNA testing on the ski mask worn by the shooter, the mask had been "available to the defense

for the last five years," and "all he had to do was get it tested."  (Id.).

First, there is no indication from the record that the prosecutor argued, expressly or

implicitly, that the jury could find Petitioner guilty because he failed to prove his innocence (see

26

Resp. Ex. 1, Vol. VI at transcript pp. 767-81, 802-13).  Second, the prosecutor did not argue that

the jury could find Petitioner guilty because the defense witnesses failed to proclaim his

innocence on the day he was arrested.  Rather, he highlighted his impeachment of Petitioner's

alibi witnesses regarding their ability to remember details of the day of the murder, and their

testimony that they did not come forward with their evidence until more than a year after

Petitioner's arrest (Id. at transcript pp. 772-73, 777-78, 805-07, 812). These statements were fair

comment on the credibility of Petitioner's alibi witnesses and the evidence.

    Third and finally, regarding the comments about the lack of DNA evidence, the

prosecutor said:

> It's interesting that the defense comes in now and says, well, there's no
> fingerprint testimony, so there's no fingerprints.  Why not? Well, folks, just think
> for a second.  Just think for a second.  Do you think if any of these fingerprints
> matched any of these defendants, you wouldn't have heard about it?  Isn't here
> another logical conclusion?  None of the fingerprints matched any of the
> defendants.  That's why you didn't hear it.
>
> Was there any DNA? If there had been any, don't you think you would
> have heard it? Do you think I'm keeping evidence back from you?  I'm telling you
> everything I know. More importantly, that ski mask that he's standing here telling
> you about DNA has been available to the defense for the last five years, too.  If he
> wanted to get it tested, all he had to do was get it tested.

(Id. at transcript p. 808).

    "[P]rosecutors must refrain from making burden-shifting arguments which suggest that

the defendant has an obligation to produce any evidence or to prove innocence." *United States v.*

*Simon*, 964 F.2d 1082, 1086 (11th Cir. 1992).  The prosecutor did not state that Petitioner had the

burden to prove his innocence or an obligation to produce evidence. Rather, the argument was in

direct response to defense counsel's argument that:

> "The quality of evidence in this case is just purely terrible.  There's a lot of
> evidence of the murder, a lot of pictures, but none of those what I refer to as tie-in
> pieces of evidence have ever been given to you.  Who knows what those prints

would have shown? The DNA? The hair samples? The shoe imprint? Who
knows?"

(Id. at transcript p. 797).

The prosecutor's comments were proper because they were made in direct response to
defense counsel's argument regarding the quality of the State's evidence and lack of DNA and
other physical evidence.  Further, the prosecutor commented that defense counsel, not Petitioner,
could have obtained DNA testing.  *See United States v. Long*, 300 Fed. Appx. 804, 816 (11th Cir.
2008) (unpublished) ("[W]hile a prosecutor may not comment about the absence of witnesses or
otherwise attempt to shift the burden of proof, it is not improper for a prosecutor to note that the
defendant has the same subpoena powers as the government, particularly when done in response
to a defendant's argument about the prosecutor's failure to call a specific witness. . . .It also is
not error to comment on the failure of the *defense*, as opposed to the *defendant*, to counter or
explain the evidence.") (emphasis in original) (internal citations and quotations marks omitted).

Moreover, even if the comments were improper, they were rendered harmless by the trial
court's instruction to the jury that "the state has the burden of proof" and "defendant is not
required to present evidence or prove anything."  (Resp. Ex. 1, Vol. VI at transcript p. 824).  *See*
*Simon*, 964 F.2d at 1087 ("[T]he prejudice from the comments of a prosecutor which may result
in a shifting of the burden of proof can be cured by a court's instruction regarding the burden of
proof.").  Further, the trial judge instructed the jury that the attorneys' arguments were not
evidence (Id. at transcript p. 767).  *See Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001)
(citations omitted) (stating that "jurors are presumed to follow the court's instructions."), *cert.*
*denied*, 534 U.S. 1085 (2002).

After  reviewing the record, viewing the comments in the context of the trial as a whole,
and assessing their "probable impact" on the jury, this Court concludes that the prosecutor's

comments, even if any were improper, did not render the entire trial fundamentally unfair so as to result in a due process violation. *See United States v. Hill*, 643 F.3d 807, 849 (11th Cir. 2011).

Petitioner has failed his burden of proving that the state court's decision denying this claim was contrary to controlling Supreme Court precedent or based on an unreasonable determination of the facts. Accordingly, Ground Six does not warrant relief.

**Ground Seven**

Petitioner contends that he was denied due process because the prosecutor knowingly presented false testimony in violation of *Giglio v. United States*, 405 U.S. 150 (1972). In *United States v. Brown*, 2013 U.S. App. LEXIS 8327 (11th Cir. Apr. 24, 2013), the Eleventh Circuit Court of Appeals stated:

> The government's presentation of perjured testimony or failure to correct false evidence violates due process. *Giglio*, 405 U.S. at 153-55, 92 S.Ct. at 766. To prevail on a *Giglio* claim, the defendant must establish that (1) the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony; and (2) the falsehood was material. *United States v. Dickerson*, 248 F.3d 1036, 1041 (11th Cir. 2001). Perjury is defined as testimony "given with the willful intent to provide false testimony and not as a result of a mistake, confusion, or faulty memory." *United States v. McNair*, 605 F.3d 1152, 1208 (11th Cir. 2010) (quotation omitted). A false statement is material if there is any reasonable likelihood that it could have affected the jury's judgment. *United States v. Alzate*, 47 F.3d 1103, 1110 (11th Cir. 1995).

*Id*. at *8.

In support of this claim, Petitioner argues that on cross examination, by virtue of the prosecutor's questioning, false and misleading testimony was presented to the jury through Streeter that he had never implicated Petitioner in any shootings other that the Tyler shooting, when in fact, Streeter had implicated Petitioner in the Large and Boyd shootings.[12]

---

[12]Petitioner raised this claim on direct appeal (Resp. Ex. 2). The appellate court affirmed without written opinion (Resp. Ex. 4).

Prior to calling Streeter as a witness, defense counsel raised concerns about the prosecutor's anticipated cross examination of Streeter concerning other shootings (the "Boyd," "Large," and "John's Resort" shootings).  During police questioning, Streeter had admitted his involvement in those shootings, but had not implicated Petitioner. Knowing that Streeter had subsequently implicated Petitioner in the Boyd and Large shootings, Defense counsel argued that it would be false and misleading for the prosecutor to suggest through huis cross examination of Streeter that he had implicated Petitioner only in the Tyler shooting:

> And to suggest to the jury that this is the only one that he's implicated Mr. Shuler in is not only misleading, but it's not true.

 (Id. at transcript pp. 610-13).

The prosecutor acknowledged that Streeter had implicated Petitioner in the Boyd shooting, but represented that he was "not going to ask him about Boyd."  (Id. at transcript p. 615). He argued that he should be able to impeach Streeter's credibility by bringing out that four days after the Tyler shooting, after Streeter and Lester had been arrested for the several shootings, including Tyler's, Streeter implicated Petitioner only in the Tyler shooting (Resp. Ex. 1, Vol. V at transcript pp.  608-14).

The state court judge ruled that the State "can attack [Streeter's] credibility by that"  (Id. at transcript p. 615), and informed defense counsel that "you're welcome to cross-examine [Streeter] on it, if you wish" and "if you want to flesh out the issues of credibility and truthfulness and perjury and whatever, you're welcome to do so."  (Id. at transcript p. 617).

On direct examination, defense counsel had Streeter describe the Tyler shooting and the participants. Streeter confirmed that Petitioner was not involved on the shooting. (Id. at transcript p. 640). In response to defense counsel's questions, Streeter admitted having implicated Petitioner in the Tyler shooting after he learned Tyler had died, "[b]ecause that was the

30

predesigned plan between me and Victor Lester." (Id. at transcript p. 647-48). He told the jury he

waited to say Petitioner was not present during the shooting, deciding "to tell the truth." (Id. at

transcript p. 649).

During the prosecutor's cross-examination, Streeter admitted that he had been convicted

of killing Tyler, and that he and Lester had been convicted for the other shootings that occurred

on April 30, 1998, including the John's Resort shootings and the Boyd shooting (Id. at transcript

p. 651). Specifically, Streeter confirmed that Lester had been convicted of the several murders,

including Boyd's:

> Q.     But the whole series of things that happened on April the 30th that
>        involves another murder, shooting five people at John's
>        Restaurant, shooting another guy, and shooting Cathy Boyd, he
>        was involved in all of that, wasn't he, and got convicted of all of
>        them, right?
>
> A.     Right

Notwithstanding the prosecutor's representation that he would not ask Streeter about the Boyd

murder, the jury became aware of the Boyd shooting by virtue of his cross-examination. The

prosecutor followed up by asking Streeter why he waited to accuse Lester of the Tyler shooting,

rather than Petitioner:

> Q.     Well, then, why is it that last October, November was the first time
>        that you ever told anybody that Victor Lester and not Curtis Shuler
>        shot Larry Tyler? I mean, weren't you questioned by the police that
>        night?
>
> A.     Yeah.

Streeter admitted having initially told the police that Petitioner shot Tyler and Streeter

and Lester shot Christina Large:

> Q.     Isn't it true that in that statement, you said Curtis Shuler shot Larry
>        Tyler?
>
> A.     Yes, I did.

Q.      Isn't it true that as regards Christina Large, the lady in the little red
        car, you said me and Victor Lester did that. Isn't that right?

A.      That's right.

The prosecutor continued:

Q.      So you're saying that you lied to the police?  In the -- in the -- that
        moment as quick as it was, being arrested unexpectedly, you put
        that on -- the one murder on Curtis Shuler, *but you left him out of
        all these other crimes*?  And you --

A.      It doesn't take a lot -- much contemplation on it, John.

Q.      She asked you questions about John's Resort, didn't she?

A.      Correct.

Q.      You didn't put any blame for John's Resort on Curtis Shuler, did
        you?

A.      No, I didn't.

Q.      Now, after that first night, when you said that Curtis did the Larry
        Tyler murder but Victor and I did the rest of them, you've had
        occasion to give other statements.  You gave a deposition, didn't
        you?  Back in October of 1999, you gave a deposition to myself,
        Mr. Colon, and Mr. Hileman.  Do you remember giving a
        deposition?

A.      I remember giving quite a few depositions.

Q.      It's a fair statement, isn't it, that this is a year and a half later now,
        a year and a half you've had to sit in jail.  In this deposition, isn't it
        true that you said Curtis Shuler shot Larry Tyler?

A.      I don't know.

Q.      You don't know?

A.      I don't know.  I just told you I gave many a depositions.  I'm not
        sure which one that is.

32

Q.      Okay.  Maybe I can ask the question simpler, instead of going
        through every page of this deposition.  Whatever proceedings you
        testified in up until last October, November, each time you were
        questioned, you said Curtis Shuler shot Larry Tyler, didn't you?

A.      Correct.

Q.      You were already convicted in some of those, weren't you?

A.      No, I don't believe so.

Q.      You don't believe you were?

A.      No, I believe my trials came last, if I'm not mistaken.

Q.      If you testified in a proceeding before that involved Curtis Shuler,
        like we're in a trial now --

A.      Okay.

Q.      -- and Curtis Shuler is the person involved, you testified in another
        proceedings in which Curtis Shuler was the person involved.

A.      I believe I had not been to trial yet, is what I'm trying to say.

Q.      During -- okay.  But in any event, in that proceeding, you said
        Curtis Shuler shot Larry Tyler?

A.      Correct.

Q.      *Isn't it also true that as to the other crimes*, your testimony
        remained the same with regard to the crimes that happened on the
        30th?  Each time, you said Curtis didn't have anything to do with
        shooting Christina Large, Curtis didn't have anything to do with
        shooting the five people at John's Resort, *and the only person that
        Curtis shot was Larry Tyler.*  That was also your testimony in those
        proceedings, wasn't it?

A.      I believe so.

Q.      With regard to the Larry Tyler homicide, you had even more details
        than just he did it.  Didn't you say Curtis Shuler was laughing

33

> about it afterwards and said the man shouldn't have bucked him or words to that effect?

A.    Possibly.

Q.    Well, you did say that Curtis said something along those lines, didn't you?

A.    I believe so.

Q.    And that he was laughing about it.  So --

A.    I can't concede to the exact words you're saying, John, because I don't recall, is what I'm trying to tell you.

Q.    In each of those other statements leading up to just three or four months ago, did you say that Victor Lester, yourself, Adrian Moore, and Curtis Shuler were at the Grenelefe sign, in every statement up until last October or November?

A.    Correct.

(emphasis added).

Despite knowing that Streeter had implicated Petitioner in the Boyd shooting, and arguably the Large shooting, by his questioning, the prosecutor left a false impression that Streeter had not implicated Petitioner in any shooting other than Tyler's.[13] Notwithstanding, there was no *Giglio* due process violation, because defense counsel was aware that Streeter had implicated Petitioner in the Boyd shooting, and consciously decided not to delve into it, concerned that he would be waiving appellate issues. (Id. at transcript p. 618) (". . . and I'm just not going to do that. I mean, I don't think I can."). "*Giglio* error is a species of *Brady* error that occurs when 'the *undisclosed evidence* demonstrates that the prosecution's case included

---

[13] The false impression qualifies as false or misleading for purposes of Petitioner's due process challenge. *See Dinh Tan Ho v. Thaler*,  495 Fed.Appx. 488, 493 (5th Cir. 2012), *cert. denied*, 133 S.Ct. 1634 (2013).

perjured testimony and that the prosecution knew, or should have known, of the perjury.'" *Ventura v. AG*, 419 F.3d 1269, 1276 (11th Cir. 2005) (quoting *United States v. Agurs*, 427 U.S. 97 (1976)) (emphasis added).

Accordingly,  Petitioner's *Giglio* claim based on Streeter's false testimony that he implicated Petitioner only in the Tyler shooting fails.  *See Hammond v. Hall*, 586 F.3d 1289, 1308-09 (11th Cir. 2009) (*Giglio* claim failed because information not suppressed and was known to defense counsel).  Further, defense counsel failed to object.  "There is no violation of due process resulting from prosecutorial non-disclosure of false testimony if defense counsel is aware of it and fails to object."  *Routly v. Singletary*,  33 F.3d 1279, 1286 (11th Cir. 1994) (no violation of due process from prosecutorial non-disclosure of false testimony if defense counsel aware of it and fails to object), *cert. denied*, 515 U.S. 1166 (1995); *Dinh Tan Ho v. Thaler*,  495 Fed.Appx. at  494 (prosecutor's use of false or misleading evidence not a due process violation when defense counsel aware that testimony misleading and consciously decides not to clarify it for jury).[14]  The state appellate court's resolution of this claim was not contrary to or an unreasonable application of *Giglio*.

Moreover, Streeter's testimony on this point was not material.  Moore and Lester testified that Petitioner shot Tyler.  Streeter's initial statements to police and testimony during Petitioner's first trial implicated Petitioner in the Tyler shooting.  The prosecutor impeached Streeter regarding his new testimony that Lester shot Tyler.  He also impeached  Petitioner's witnesses

---

[14] *cf.  Sivak v. Hardison*,  658 F.3d 898, 909 (9th Cir. 2011) ("irrelevant" whether defense knew about false testimony and failed to object or cross-examine the witness, because defendants "c[an]not waive the freestanding ethical and constitutional obligation of the prosecutor as a representative of the government to protect the integrity of the court and the criminal justice system." )

regarding their alibi evidence. In sum, substantial evidence supported Petitioner's murder conviction and Petitioner has not demonstrated that there is a reasonable likelihood that the false and misleading impression created by the prosecutor could have affected the jury's judgment.

Further, even if the testimony was material, and Petitioner has established that a *Giglio* error occurred, federal habeas relief may be granted on the claim only if the error "had 'substantial and injurious effect or influence in determining the jury's verdict.'" *Trepal v. Sec'y, Fla. Dep't of Corr.*, 684 F.3d 1088, 1112 (11th Cir. 2012) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). Stated another way, this Court "cannot grant federal habeas relief to [Petitioner] unless (1) he shows that [Streeter's] false testimony violated *Giglio*, and (2) [the Court] find[s] that the *Giglio* error was not harmless under *Brecht*." *Trepal*, 684 F. 3d at 1113.

In light of the State's eyewitness testimony implicating Petitioner in the Tyler shooting, and the relatively weak alibi evidence in relation to the State's case, the challenged portions of Streeter's testimony could not have had a substantial and injurious effect or influence in the jury's guilty verdict. Therefore, any *Giglio* error was harmless.

Petitioner has failed to demonstrate that the state court's resolution of his *Giglio* claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accordingly, Ground Seven does not warrant relief.

**Ground Eight**

Petitioner contends that trial counsel was ineffective in failing to call two alibi witnesses, Ebony and Kawana Williams, to testify at trial. Petitioner asserts that these witnesses would have testified that: 1) when Streeter, Lester, and Moore came to their home on the day of the

Tyler shooting, Petitioner was not with them; 2) Petitioner was not at their home on the day or night of the shooting; and 3) Petitioner spoke to Ebony Williams on the telephone at approximately 10:00 or 10:30 p.m. the night of the shooting.  Petitioner argues that counsel's failure to call these witnesses prejudiced him because it deprived him of strong alibi evidence that Petitioner was not with Streeter, Lester, and Moore at the time Tyler was shot.

In state court, Petitioner raised this claim as Ground 14 of his Rule 3.850 motion (Resp. Ex. 14, Vol. II at 275-77).  There, Petitioner asserted that Ebony and Kawana Williams would have testified that Petitioner did not come to their home with Streeter, Lester, and Moore on the evening of the Tyler shooting (Id.).  Petitioner did not, however, allege that he spoke to Ebony Williams on the phone that night at approximately 10:00 or 10:30 p.m.  Rather, he alleged that he spoke with her on the telephone shortly before 6:00 p.m., at which time she informed him that Streeter, Lester, and Moore had arrived at her home (Id.).

In denying the claim, the state post conviction court stated:

> In claim 14A, the Defendant asserts trial counsel was ineffective for failing to investigate and present witnesses Ebony Williams and Kawana Williams. The Defendant contends these witnesses were essential alibi witnesses. The shooting in this case occurred at approximately 9:30 in the evening. The essence of neither Ebony Williams nor Kawana Williams testimony, at the evidentiary hearing, established any firm alibi concerning the Defendant's whereabouts at the time of the shooting. Although their testimony may have conflicted with other witnesses who stated that the Defendant was at the Williams' house at some point prior to the shooting, based on all the evidence presented at the evidentiary hearing, the Court cannot find that their testimony at the Defendant's trial would have led to a reasonable probability of a different result.

> Additionally, although absent from his argument in his Motion, at the evidentiary hearing the Defendant argued trial counsel was ineffective in not presenting Ebony Williams's testimony that she had talked to the Defendant on the telephone at the time the shooting was taking place. However, the Court finds

37

that her testimony at the evidentiary hearing was insufficient to provide an effective alibi as to the Defendant's whereabouts at the time of the shooting. Additionally, trial counsel testified that although he was aware of both Williams as potential witnesses he was unaware of any potential testimony of Ebony Williams concerning phone conversations with the Defendant. Neither during the Defendant's trial nor his previous trials had the Defendant ever mentioned, during his testimony, that he had been on the phone with Ebony Williams during the time of the shooting. Trial counsel's strategy, as evidenced by his closing argument and the testimony of witnesses, was to establish that the Defendant was at a family gathering and at home working on his car at the time of the shooting. (See attachments, Tr. at p. 781-802)

Based on the testimony presented at the evidentiary hearing and the Court's evaluation of the credibility of that testimony, the Court finds that neither the first or second prong of *Strickland*, as discussed above, has been met by the Defendant. [*See also Bowman v. State*, 748 So. 2d 1082 (Fla. 4th DCA 2000)("[W]hile the alibi evidence conceivably could have affected the verdict, *Strickland* requires more than a showing that the errors had some conceivable effect on the outcome. The defendant must demonstrate a *reasonable probability*- i.e., one that undermines confidence in the outcome - that absent counsel's errors, the fact finder would have had a reasonable doubt respecting guilt. *Strickland*, 466 U.S. at 694.")] Accordingly, **claim 14A is DENIED**.

(Resp. Ex. 14, Vol. VII at record pp. 1019-20) (emphasis in original). Petitioner appealed the

state post conviction court's denial of his 3.850 motion, and the appellate court *per curiam*

affirmed the denial without written opinion (Resp. Ex. 16).  This Court finds that the state courts'

decisions were neither contrary to, nor an unreasonable application of *Strickland*.

During the post conviction evidentiary hearing, Petitioner's trial counsel testified in

pertinent part that he did not "have any recollection of why [Ebony and Kawana Williams] did

not testify." (Resp. Ex. 14, Vol. VI at record p. 858).  He testified that his records indicated that

he hired a private investigator who made an attempt to interview Ebony and Kawana Williams

(Id. at record p. 869).  His notes indicated that he gave the investigator "specific instructions to

locate Ebony Williams."  (Id. at record p. 907).  He could not recall whether or not the

investigator actually made contact with them, but he assumed that the investigator did not locate them because they did not testify at trial (Id. at record p. 883).   His records also indicated that he wanted to subpoena Ebony and Kawana Williams, but there was no indication whether or not a subpoena was actually issued (Id. at record p. 870, 883).  Counsel further testified that had the investigator located Ebony and Kawana Williams, he likely would have called them to testify (Id. at record pp. 883-84).  Finally, his notes indicated that Ebony and Kawana Williams' address was 2563 Elm Avenue in Lake Wales, Florida (Id. at record pp. 885-86).

Ebony Williams testified that she lived at the Elm Avenue address in 2000, until she moved to a different city in 2001 (Id. at record pp. 925-26, 941-42).  Kawana Williams testified that she moved from the Elm Avenue address at the end of 2002 (Id. at record p. 952).  Ebony Williams also testified that she had no communication with Petitioner after the date of the Tyler shooting (Id. at record p. 944).   Petitioner testified that when he discussed Ebony and Kawana Williams with his attorney, he did not know how to contact them (Id. at record p. 974).  He did not know where they lived or worked (Id. at record pp. 974-75).  Petitioner did not keep in contact with Ebony Williams as she moved to different residences, and he did not know where she was at the time of his final trial (Id. at record p. 984).

Petitioner essentially contends that counsel's performance was deficient because he failed to find Ebony and Kawana Williams and call them to testify at trial.  Petitioner, however, never explains how counsel's efforts to locate the witnesses were deficient.  Counsel testified that he hired a private investigator and instructed the investigator to locate Ebony Williams.  Counsel concluded that the investigator was unable to locate Ebony Williams because he would have called her to testify had she been located.  At the time of Petitioner's final trial in March 2003,

neither Ebony Williams nor Kawana Williams lived at the address counsel had in his file, and

Petitioner did not know where they lived.

    In evaluating the performance prong of the *Strickland* test, this Court must adhere to a

strong presumption that "counsel's conduct falls within the wide range of reasonable professional

assistance." *Strickland*, 466 U.S. at 689.  The record, at best, is unclear with respect to what

extent counsel investigated Ebony and Kawana Williams, and whether counsel could have

located them to testify at Petitioner's final trial.  "'An ambiguous or silent record is not sufficient

to disprove the strong and continuing presumption of counsel's competency.  Therefore, where

the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what

he should have done, and that he exercised reasonable professional judgment.'"  *Williams v.*

*Allen*, 598 F.3d 778, 794 (11th Cir. 2010) (quoting *Chandler v. United States*, 218 F.3d 1305,

1315 n. 15 (11th Cir. 2000).  Although Petitioner's state post conviction counsel "had absolutely

no problem finding [Ebony and Kawana Williams]" in 2008  (Id. at record p. 991), that fact does

not overcome the presumption that trial counsel "exercised reasonable professional judgment" in

attempting to locate Ebony and Kawana Williams in 2003.

    Counsel cannot be deemed ineffective in failing to call witnesses that he was unable to

locate.  In light of the record and trial counsel's actions, this Court does not find that trial counsel

was deficient.

    Even assuming trial counsel's performance was deficient, Petitioner has not shown

prejudice.  Kawana Williams testified during the post conviction evidentiary hearing that

Streeter, Lester, and Moore left her home before 8:00 p.m. (Resp. Ex. 14, Vol. VI at record p.

966).  Ebony Williams testified that she did not know the time Streeter, Lester, and Moore left,

but she recalled that they left when it was "becoming dark." (Id. at record p. 934).  She also

testified that the only time she spoke to Petitioner on the night of the Tyler shooting was "about

10:00, 10:30." (Id. at record p. 933).  Tyler was shot at approximately 9:30 p.m. (Id. at record p.

915).  Therefore, as the state post conviction court found, Ebony and Kawana Williams'

testimony did not establish a "firm alibi concerning [Petitioner's] whereabouts at the time of the

shooting" because Petitioner could have met with Streeter, Lester, and Moore after they left the

Williams' residence and before the Tyler shooting, and called Ebony Williams after the shooting.

Consequently, their testimony would have been, at best, cumulative to Streeter and the other alibi

witnesses' testimony that Petitioner was not at Ebony and Kawana Williams' home on the

evening of the Tyler shooting.  Accordingly, even if Ebony and Kawana Williams were located

and testified at Petitioner's final trial, there is not a reasonable probability that the outcome of the

trial would have been different.

Petitioner has failed to show that the state courts' denial of this claim was an

unreasonable application of *Strickland* or based on an unreasonable determination of the facts in

light of the evidence presented in the state court proceeding.  Accordingly, Ground Eight does

not warrant relief.

**Ground Nine**

Petitioner (and Streeter) were charged with first-degree murder, armed burglary, and

shooting into an occupied vehicle (Resp. Ex. 1, Vol. I at record pp. 81-84).  Petitioner was

convicted of first-degree murder and the lesser included offense of attempted burglary, and

acquitted on the shooting into an occupied vehicle count.  Petitioner argues that his acquittal of

the shooting into a vehicle and armed burglary counts, and the jury's finding that Petitioner did

not carry, use, or display a firearm during the commission of the crimes (see id. at record pp. 127-28), should preclude his conviction on the first-degree murder count because carrying, displaying, or using a firearm was an essential element of the first-degree murder charge.

Respondent argues that this claim is barred from review because Petitioner procedurally defaulted the claim in state court by failing to raise it on direct appeal or in a timely Rule 3.850 post conviction motion (Dkt. 29 at pp. 41-42).  The Court agrees.

Petitioner did not raise this claim on direct appeal (Resp. Ex. 2).  Nor did he raise it in either his initial Rule 3.850 motion (Resp. Ex. 14, Vol. II at 226-306) or his Initial Brief on appeal from the denial of the motion (Resp. Ex. 15).  Rather, he initially raised the claim in his motion for rehearing of the state appellate court's decision affirming the denial of his initial Rule 3.850 motion (Resp. Ex. 18).  The state appellate court summarily denied the motion for rehearing without written explanation (Resp. Ex. 19).

"Rule 9.330 of the Florida Rules of Appellate Procedure provides that a motion for rehearing 'shall not present issues not previously raised in the proceeding.'"  *Envtl. Confederation of Southwest Fla., Inc. v. IMC Phosphates, Inc.*, 857 So. 2d 207, 214 (Fla. 1st DCA 2003).  Generally, Florida courts will not consider issues raised for the first time after a decision on the merits in a motion for rehearing.  *See, e.g., Fleming v. State*, 82 So. 3d 967, 971 (Fla. 4th DCA 2011) ("this court will not consider the issue on a motion for rehearing or motion for rehearing en banc. . . [b]ecause the issue was not raised prior to a decision on the merits").  Accordingly, this claim was not properly exhausted since it was raised in a procedurally incorrect manner in state court.

Likewise, the claim was not properly exhausted when Petitioner raised it in his second

Rule 3.850 motion (Resp. Ex. 33).  Fla. R. Crim. P., Rule 3.850(b) establishes a two-year statute

of limitations with certain exceptions.  Further, "Rule 3.850 imposes a procedural bar to

successive motions for such relief when the issue could have been raised in a previous motion[.]"

*Harmon v. Barton*, 894 F.2d at 1270.  The state post conviction court rejected Petitioner's second

Rule 3.850 motion, stating in pertinent part that the motion "is untimely and successive. . .[and]

simply without legal merit."  (Resp. Ex. 35).  Therefore, the state post conviction court applied

Florida's procedural rules foreclosing Petitioner from raising the claim in an untimely and

successive Rule 3.850 motion.[15]  The state appellate court affirmed the order on appeal without

written opinion (Resp. Ex. 39).[16]

Finally, the claim was not properly exhausted when Petitioner raised it in the Florida

Supreme Court in a petition for writ of habeas corpus (see Dkt. 37 at p. 32).  The Florida

Supreme Court dismissed the petition as unauthorized (Resp. Exs. 31, 32).  In dismissing the

petition, the Florida Supreme Court cited to *Baker v. State*, 878 So. 2d 1236 (Fla.2004) which

holds that "[t]he remedy of habeas corpus is not available in Florida to obtain the kind of

collateral postconviction relief available by motion in the sentencing court pursuant to rule

3.850."  *Id*. at 1245.

The State's procedural bars rested on adequate state grounds independent of the federal

---

[15]Although the state court, in the alternative, addressed the claim on the merits, this Court will apply the state procedural bar and decline to reach the merits of the claim.  *See Waldrip v. Humphrey*, 2013 U.S. App. LEXIS 17492, at *13 (11th Cir. Aug. 21, 2013) (unpublished) ("'[W]here a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim.'") (quoting *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994)).

[16]The per curiam affirmance, although silent on this issue, is presumed to rest on the same ground as the last reasoned decision addressing the question, in this case the procedural bar, an adequate and independent state ground. *See Ylst v. Nunnemaker*, 501 U.S. 797 (1991).

question. Petitioner is now barred by state procedural rules from returning to state court to present this claim, because another Rule 3.850 motion would be subject to dismissal as untimely and successive. See Fla. R. Crim. P. 3.850(b), (f).  As such, Ground Nine is procedurally defaulted. Therefore, absent an exception to the procedural default bar, Ground Nine is barred from review by this Court.

Petitioner has failed to show cause and prejudice or that a fundamental miscarriage of justice will result if Ground Nine is not addressed on the merits. Consequently, he is not entitled to federal review of Ground Nine.

**Ground Ten**

Petitioner contends that, because his original sentence in case no. 98CF2950 (felony causing bodily injury conviction) was an 149 month prison term *concurrent* to his sentence in case no. 98CF2951 (first-degree murder and attempted burglary convictions), his resentencing in case no. 98CF2950 to a *consecutive* 138 month prison term violated the Double Jeopardy Clause. Respondent argues that this claim is barred from review because Petitioner procedurally defaulted the claim in state court by failing to raise it on direct appeal from his resentencing or in his first Rule 3.850 post conviction motion (Dkt. 29 at p. 42).  The Court agrees.

When Petitioner raised this claim in state court in his motion to amend his second Rule 3.850 motion (Resp. Ex. 34), the state post conviction court rejected it as untimely and on the merits (Resp. Ex. 35).  Therefore, the state post conviction court applied Florida's procedural rule foreclosing Petitioner from raising the claim in an untimely Rule 3.850 motion. The state appellate court affirmed the order on appeal without written opinion (Resp. Ex. 39).

The State's procedural bar rested on adequate state grounds independent of the federal

44

question. This court will consider a claim procedurally defaulted if it was presented in state court

and rejected on the independent and adequate state ground of procedural bar or default. *See*

*Coleman v. Thompson*, 501 U.S. at 734-35.  As such, Ground Ten of the instant petition is

procedurally barred from review by this Court as it was found to be procedurally defaulted by the

state courts. Therefore, absent an exception to the procedural default bar, Ground Ten is barred

from review by this Court.

Petitioner has failed to show cause and prejudice or that a fundamental miscarriage of

justice will result if Ground Ten is not addressed on the merits. Consequently, he is not entitled

to federal review of Ground Ten.

Notwithstanding the procedural default, the claim is without merit.  In denying the claim

in the alternative on the merits, the state post conviction court stated:

> Case number CF98-02950A-XX was remanded for resentencing pursuant to
> Second District Court of Appeal Mandate.  As stated in Lippman v. State, 633
> So.2d 1061, 1064 (Fla. 1994) (quoting North Carolina v. Pearce, 395 U.S. 711
> (1969) [sic] concerning the protections afforded by the double jeopardy clause:
>
>> "It protects against a second prosecution for the same offense after
>> acquittal.  It protects against a second prosecution for the same
>> offense after conviction.  And it protects against multiple
>> punishments for the same offense."
>
> None of these protections are implicated in the instant case where the case was
> remanded for resentencing, such a resentencing is de novo. [See also State v.
> Collins, 985 So.2d 985 (Fla. 2008)] Based on the above, the Defendant's claim as
> asserted in his *Motion to Amend Ground for Rule 3.850 Motion for Post
> Conviction Relief* is DENIED.

(Resp. Ex. 35).

Petitioner's argument that the state trial judge's sentencing him to a consecutive sentence

following the appellate court remand for resentencing violated double jeopardy principles

warrants no relief.  "[A] resentencing following a reversal on a sentencing issue does not implicate double jeopardy concerns." *State v. Collins*, 985 So. 2d 985, 993 (Fla. 2008) (citing *Trotter v. State*, 825 So. 2d 362, 368 (Fla.2002) (holding that double jeopardy principles are not violated where the trial court did not impose a multiplier at the original sentencing but imposed a multiplier on remand); *Harris v. State*, 645 So. 2d 386, 388 (Fla. 1994) (holding that imposition of a habitual offender sentence on remand after the trial court's pronouncement of a non-habitual sentence in the original proceeding does not violate double jeopardy); *Walker v. State*, 988 So. 2d 6, 8 (Fla.2007) (Altenbernd, J., concurring specially) ("There is no doubt that double jeopardy is not implicated in this case because Mr. Walker has successfully sought reversal of the sentence in this appeal.")).  *See also United States v. Rozier*, 485 Fed. Appx. 352, 358 (11th Cir. 2012) (unpublished) ("For purposes of the Double Jeopardy Clause, resentencing does not create multiple punishments for the same offense since the prior punishment is void, provided that the defendant receives credit for time served.") (citing *United States v. Cochran*, 883 F.2d 1012, 1016 (11th Cir. 1989)). Consequently, Petitioner fails to establish a double jeopardy violation.

Petitioner has not shown that the state courts' rejection of this claim was contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, Ground Ten does not warrant habeas corpus relief.

ACCORDINGLY, it is **ORDERED** that:

1. The Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**.

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA

### PAUPERIS DENIED

A prisoner has no absolute right to appeal the denial of a § 2254 petition. 28 U.S.C. §

2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A

[COA] may issue...only if the applicant has made a substantial showing of the denial of a

constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner must show that

reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the

procedural issues he seeks to raise. See 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473,

478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).

With the exception of Ground Seven, Petitioner cannot make the requisite showing in

these circumstances. As for Ground Seven, reasonable jurists could disagree on whether the

prosecutor's cross examination of Streeter violated petitioner's due process rights. Because

Petitioner is entitled to a COA as to ground Seven, he is entitled to appeal *in forma pauperis*.

**DONE and ORDERED** this *30* day of September, 2013.

JAMES D. WHITTEMORE
United States District Judge

Copy to: Petitioner *pro se*
         Counsel of Record